E-FILED
Friday, 25 June, 2010  11:56:31 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SHAFFER & SONS CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 08-3007 |
| v. | ) | |
| | ) | |
| ALTER TRADING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Plaintiff's supplement to motion for leave to file first amended complaint instanter. For the reasons that follow, the motion is Allowed in Part and Denied in Part.

I.

On October 30, 2009, the Court allowed in part and denied in part the Plaintiff's motion for leave to file its first amended complaint instanter. The Plaintiff again seeks leave to amend its Complaint. Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given,

though it does not follow that it should always be given.  See Hukic v. Aurora Loan Services, 588 F.3d 420, 432 (7th Cir. 2008).  "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants or where the amendment would be futile." Arreola v. Godinez, 546 F.3d 788, 796 (7th Cir. 2008).

## II.

In support of its new motion, the Plaintiff claims that Counts I, II and III of the proposed Complaint reflect the testimony of Beverly Howell, the Plaintiff's bookkeeper, who was in charge of accumulating the information needed to invoice the company's customers.  The charges reflected in Counts II and III are based, in part, on information supplied by Terry Gallaher, an independent contractor responsible for supplying labor for the Plaintiff's jobs described in the complaint.

The Plaintiff further alleges that the notebooks where Mr. Gallaher recorded the hours he and his employees worked on the various jobs are attached as exhibits to the final pretrial order.  These notebooks were not

2

located by Mr. Gallaher and provided to the parties' counsel until a few days before his deposition, which was taken on March 16, 2010.

The Plaintiff further asserts that William Shaffer, who suffers from dyslexia and has trouble reading, had no role in compiling the information needed to bill the customers of his company or in preparing invoices. That was Ms. Howell's responsibility. The Court notes that, in an Order entered on May 30, 2009, summary judgment was entered in favor of the Defendant on Counts V and VI of the Complaint when the Court concluded, based on Mr. Shaffer's deposition testimony, that those counts were duplicative of Counts II and III. On October 30, 2009, the Court denied the Plaintiff leave to combine Counts II and V of the Complaint in order to add a new Count I.

The Plaintiff contends that a review of Mr. Shaffer's deposition testimony regarding scrap processing conducted at the Celotex facility reveals that extensive work was done at different times in different parts of different buildings. Water pumps were used at certain locations and not at others. The total hours worked at various locations were drastically

different.  The materials salvaged, from engines which were resold as they

were found to two story vats which had to be cut for relocation, were found

in different parts of the facility, etc.  The Plaintiff claims that this work was

separate from the clearing of the fire lane and it has not been paid for this

processing.[1]

The Plaintiff further asserts that much of the need to reconstruct

hours of labor and hours that equipment was utilized is the result of the

Defendant's failure to weigh processed scrap so that Plaintiff could be paid

on the agreed per ton basis.  Thus, the proposed complaint, which increases

the charges for certain processing and decreases the charges for others, is the

most accurate description of the evidence.

### III.

The Defendant objects to the bulk of the Plaintiff's motion.  The

Defendant provides several reasons for its resistance: (1) the Plaintiff only

recently (in February 2010) provided the Defendant with invoices that

---

[1]Count V of the Complaint asserted claims for unpaid bills in the amount of $228,986.50, based on an agreement that Defendant would pay the Plaintiff "to clear the fire lane at building six of the Celotex plant and to clear out the basement at that location."  Summary judgment was entered in favor of the Defendant on Count V.

4

supported four new claims; (2) the Plaintiff's request is not timely; (3) the

Defendant will suffer prejudice if the Plaintiff is permitted to add new

claims and allegations at this late stage; and (4) the addition of three of the

new claims would be futile because they fall outside of the applicable

statute of limitations.

(A)

The four new claims in proposed Count I include the following:

| | |
|---|---:|
| Labor & equipment utilized to process scrap in the interior of Building #6 of the Celotex Plant from 8/7/2004 through 9/9/2004 | $53,793.00 |
| Labor & equipment utilized to process scrap in Building #6 of the Celotex facility from 12/6/2004 through 12/29/04 | $54,713.50 |
| Labor & equipment utilized to process scrap from the basement of Building #6 of the Celotex facility from 4/25/2005 through 8/12/2005 | $259,370.50 |
| Labor & equipment utilized to process scrap in the interior of Building #7 of the Celotex facility from 3/11/2005 through 4/8/2005 | $73,029.58 |
| | $440,906.58 |

The Court will deny the Plaintiff leave to add proposed Count I.

Summary judgment was previously granted to the Defendant on Count V,

5

which sought $228,986.50, in part for alleged work "to clear out the basement" "at building six of the Celotex plant." The Defendant notes that the invoice for the proposed new claim seeking $259,370.50 contains the same invoice number as the invoice supporting dismissed Count V. The invoice for this proposed new claim also states that it is for "Building #6 Basement, Celotex Building," and paragraph 4 of Count I of the new claim of the proposed complaint is for "Labor and equipment utilized to process scrap from the basement of Building #6 of the Celotex facility. . . ." The proposed new claim certainly appears to be an attempt to circumvent the Court's previous rulings by simply repackaging a dismissed count with other new claims.

Even if the new claim in proposed Count I is not an attempt to resurrect a dismissed claim, the Court would still deny leave to add the claim for the same reason it is denying the request to add the other three new claims contained in Count I–because of undue delay. As the Defendant notes, the work referenced in these proposed new claims was allegedly performed between August 4, 2004, through August 12, 2005. The invoices

are contemporaneously dated.  Accordingly, the Plaintiff knew, or should have known, of these claims when it filed its Complaint on January 8, 2008. The deadline for amending pleadings was July 25, 2008.   The Court concludes that the delay in producing these materials was unreasonable and the Defendant may be significantly prejudiced by allowing the amendment. Accordingly, the motion to amend as it relates to Count I will be Denied.[2]

(B)

The Defendant also objects to the allegation that the purported oral agreement regarding the Salisbury, Keytesville, New London, Newark Quarry and Quincy (HyVee at Harrison) jobs was "on an hourly basis for labor and equipment used to process salvage," which is contained in paragraph 3 of Count II of the proposed First Amended Complaint.  The Plaintiff has changed the alleged damages amounts for the following jobs:

- Salisbury–from $59,160 in the Complaint to $60,414 in Count

---

[2]Having denied the motion for this reason, the Court need not consider the Defendant's alternative argument that three of the four new claims–those seeking $53,793.00, $54,713.50 and $73,029.58–are barred by the applicable statute of limitations.

II of the proposed First Amended Complaint;

- Keytesville–from $15,446 in the Complaint to $10,950 in Count II of the Proposed First Amended Complaint;

- New London–from $6,016 in the Complaint to $6,164 in Count II of the proposed First Amended Complaint;

- Newark Quarry–from $23,520 in the Complaint to $42,534 in Count II of the proposed First Amended Complaint;

- Quincy (HyVee at Harrison)–from $102,175 in the Complaint to $133,313 in Count II of the proposed First Amended Complaint; and

- Gem City Ready Mix–from $10,082 in the Complaint to $10,462.50 in Count III of the proposed First Amended Complaint.[3]

The new damage amounts sought for the Salisbury, Keytesville, New London, Newark Quarry, Quincy (HyVee at Harrison) and Gem City Ready Mix jobs are entirely different than the amounts sought on the invoices for each specific job that are attached to the Complaint–and those invoices were backdated according to the testimony of the Defendant's computer forensics expert Ben Carmitchel.

---

[3]This is asserted in Count IV of the original Complaint. The damages allegations for the other jobs are contained in Count III.

8

The Defendant further asserts that the Plaintiff only recently provided it with "new" invoices for the Salisbury, Keytesville, New London, Newark Quarry, Quincy (HyVee at Harrison) and Gem City Ready Mix jobs.  The Defendant alleges that these invoices raise several red flags and notes that, although the Plaintiff claims that these invoices "more accurately describe" the work allegedly done, the Plaintiff chose not to attach the "new" invoices to the proposed First Amended Complaint.

The Defendant states that these allegedly "more accurate" invoices were first provided five years after the work was done–and more than two years after the initial invoices for these jobs were first provided to the Defendant when the invoices were attached to the Complaint (which was nearly three years after the work was completed).  Moreover, identical invoice numbers for these "new" invoices are used for other invoices provided by the Plaintiff, including for different jobs and different companies, with different invoice dates.  Another problem, according to the Defendant, is that these "new" invoices for the same jobs contain different invoice amounts.  Additionally, all of these "new" invoices contain different

invoice dates than the invoices attached to the Complaint regarding the same jobs. The Defendant further alleges that some of the "new" invoices–Salisbury, Quincy (HyVee at Harrison) and Gem City Ready Mix–contain different rates for labor.

Regarding the particular invoices, the Defendant claims that the "new" invoice for the Gem City Ready Mix job contains entirely new entries for alleged use of a Case Skidloader and a Road Tractor 3-Axle Lowboy on the job. The "new" invoice for the Newark Quarry job is dated November 17, 2004 and seeks $42,534.00 for work allegedly performed in 2004. The "new" invoice for the Quincy (HyVee at Harrison) job is dated October 26, 2004 and seeks $133,313.00 for work allegedly performed in 2004, yet line 2(a) of Schedule L of the Plaintiff's 2004 federal income return lists trade notes and accounts receivable of only $65,339.16, as of the end of 2004. Finally, the Defendant asserts that CPA John Cook, who prepared the 2004 federal tax return for the Plaintiff, testified that the Customer Balance Summary as of December 31, 2004 provided by the Plaintiff at his request does not show Defendant owing it any money as of that date.

The Plaintiff states that these requests reflect the expected testimony of its bookkeeper, Ms. Howell, who was in charge of accumulating the information needed to invoice the Plaintiff's customers.[4]  The changes are also based on information provided by the independent contractor, Mr. Gallaher, who the Plaintiff claims was responsible for supplying labor for the jobs described in the proposed Amended Complaint.  The Plaintiff alleges that the notebooks wherein Mr. Gallaher recorded the hours he and his employees worked on the various jobs were not located by Mr. Gallaher and provided to the parties' counsel until a few days before his deposition, which was taken on March 16, 2010.

There are indeed a number of curious, if not troubling, aspects pertaining to these invoices with new damages amounts.  As the Defendant states, Mr. Shaffer and Mr. Howell both testified that the hours allegedly worked on the various jobs were contemporaneously phoned into the Plaintiff's bookkeeping department and recorded at the end of each day.  Thus, it is unclear why Mr. Gallaher's notebooks would have so much

---

[4]The Defendant states that Ms. Howell denied creating the backdated invoices, and it has not found any witness who has admitted to creating those invoices.

11

significance.

The Court notes, however, that it is not unheard of for allegations concerning alleged damages amounts to change during the course of discovery. The Defendant has been on notice of the allegations concerning the jobs at issue in proposed Count II. It is just the damages amounts that are changing. Because the Defendant received the notebooks prior to Mr. Gallaher's deposition, the Court does not believe that Defendant would be significantly prejudiced by an amendment regarding these "new" amounts. Accordingly, the Court will Allow the motion for leave as it relates to these proposed amendments.

(C)

The Plaintiff also seeks leave to reduce the amount of material allegedly added to the Defendant's inventory from "2 Gaylord Boxes of #1 Copper @ 8,900 lbs per box @ $1.56 per pound" to "3 ½ Gaylord Boxes of #1 Copper containing a total of 8,900 lbs at $1.56 per pound." Count VIII of the Complaint seeks $27,768.00. Count V of the proposed Amended Complaint seeks $13,884.00.

12

Although the Plaintiff does not provide the specific reason for this request, the Court fails to see how the Defendant would be prejudiced by allowing this amendment.  Accordingly, the Court will Allow the motion, to the extent that Plaintiff seeks to amend the alleged value of the allegedly provided #1 copper from $27,768.00 to $13,884.00.

(D)

The Defendant next objects to the Plaintiff's request to add the following underlined allegations to paragraphs 3 and 4 of the equipment purchase claim contained in Count VI of the proposed Amended Complaint[5]:

> Relying on its contractual arrangements with Defendant, Plaintiff invested in various pieces of equipment needed to perform and to be able to perform <u>a multitude of agreements with Defendants</u>, including the agreements detailed in Counts I through V above, including the Komatsu excavator, <u>attachments for the excavator</u>, four trucks specifically designed to haul steel and five <u>specially built</u> truck trailers.

> Defendant was aware that these equipment purchases were made as a result of and relying on the written and oral agreements between the parties <u>and Defendant's assertion that</u>

_____

[5]The corresponding paragraphs are contained in Count IX of the original Complaint.

13

the parties would have a long term relationship.

The Defendant further objects to allowing the Plaintiff to change the alleged damages for the equipment purchase claim from "a loss expected to be approximately $150,000" in Count IX of the original Complaint to "a loss expected to be approximately $158,000," according to Count VI of the proposed Amended Complaint.

Once again, the Court is unable to conclude that Defendant would be prejudiced by these amendments. It is not really certain that an amendment is even necessary with respect to these claims. The substantive proposed additions[6], "attachments for the excavator," and truck trailers which were "specially built," could arguably be encompassed within the general allegations, broadly interpreted, of the original Complaint. Moreover, the alleged $150,000 loss alleged is an approximate figure and not meant to be a ceiling.

It appears that the Plaintiff's alleged loss estimate slightly changed during the course of discovery. The Court will Allow the motion for leave

---

[6]The other proposed additions are general allegations which might be described as consistent with the Plaintiff's theory of the case.

14

to the extent that the Plaintiff seeks to make those changes.

(E)

The Plaintiff also seeks to amend the Complaint by alleging payment of $33,992.71 for rim sheering.  This request is contained in paragraph 4 of Count IV of the proposed Amended Complaint.  The Plaintiff also seeks to delete Count X of the Complaint.  The Defendant does not object to these requests.  The Court will Allow leave to amend Count IV to reflect the payment and leave to delete Count X.

IV.

Based on the foregoing, the Court will Deny the Plaintiff leave to amend Count I.  The allegations contained in proposed Count I appear, at least in part, to be an attempt to resurrect previously dismissed claims.  The other allegations contained in Count I are unreasonably late.  The Court will Allow the motion to amend in all other respects, on the basis that the proposed amendments will not significantly prejudice the Defendant.

Ergo, the Plaintiff's motion for leave to file its first amended complaint [d/e 39] is ALLOWED in PART and DENIED in PART.  The motion is

15

DENIED to the extent that Plaintiff seeks to amend and add Count I of the proposed Amended Complaint.  It is ALLOWED in all other respects.  The Plaintiff may within fourteen (14) days file an Amended Complaint that complies with this Order.

ENTER: June 25, 2010

    FOR THE COURT:

                    s/Richard Mills
                    United States District Judge