IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SHAFFER & SONS | ) | |
| CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 08-3007 |
| v. | ) | |
| | ) | |
| ALTER TRADING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Defendant's motion in limine [d/e 45] and the Plaintiff's first motion in limine [d/e 46].

### I. Defendant Alter Trading Corporation's Motion in Limine

#### (1) Evidence regarding settlement negotiations

Defendant Alter Trading Corporation seeks to exclude any evidence regarding settlement negotiations, pursuant to Federal Rule of Evidence 408.  Plaintiff Shaffer & Sons Construction, Inc. has no objection to the exclusion of such evidence.  Accordingly, the Defendant's motion in limine is Allowed to the extent that it seeks to exclude any evidence regarding

settlement negotiations.

<u>(2) Evidence based on Trial Exhibits 36, 37, 38 and 39</u>

The Defendant contends that the Plaintiff is seeking to add four entirely new claims. In support of its motion, the Defendant states that on April 30, 2010, the Plaintiff filed its supplement to its motion for leave to file its first amended complaint Instanter which, among other things, sought to amend the complaint by adding four entirely new claims regarding alleged work at the Celotex facility. The Defendant notes that the four purported new claims sought damages of $53,793.00, $54,713.50, $259,370.50 and $73,029.58, respectively.

On June 25, 2010, the Court issued an Opinion denying the Plaintiff leave to add the four entirely new Celotex claims because of "undue delay" and potential prejudice to the Defendant resulting from the new claims. On July 9, 2010, the Plaintiff filed its first amended complaint which does not contain the four new Celotex claims.

The Defendant claims that the Plaintiff has disclosed alleged invoices for the four previously disallowed Celotex claims as Trial Exhibits 36

(alleged Shaffer & Sons Construction Invoice No. 296 seeking $53,793.00), 37 (alleged Shaffer & Sons Construction Invoice No. 300 seeking $259,370.50), 38 (alleged Shaffer & Sons Construction Invoice No. 302 seeking $73,029.58) and 39 (Shaffer & Sons Construction Invoice No. 303 seeking $54,713.50).  The Defendant contends that any evidence pertaining to the four new Celotex claims that the Court did not allow the Plaintiff to add to the complaint, including the aforementioned trial exhibits, is irrelevant as the four previously disallowed Celotex claims are not contained in the Plaintiff's first amended complaint and are not at issue.  Accordingly, the Defendant asserts that such evidence, including Trial Exhibits 36, 37, 38, and 39, should be excluded as irrelevant.

In response, the Plaintiff states that William Shaffer, its president and sole shareholder, did not participate in any of the corporation's bookkeeping activities, including the creation and communication of invoices for work completed.  Those responsibilities were fulfilled by one of his employees, Beverly Howell.

The Plaintiff further alleges that most of the information Ms. Howell

utilized in preparing financial records was supplied by Terry Gallaher, the independent contractor employed by the Plaintiff to do manual labor for all of the projects related to this litigation. In turn, Mr. Gallaher would hire whatever manpower was needed to complete the project at hand. Mr. Gallaher would daily record the number of hours worked by each employee and transmit this information by phone to Ms. Howell, who would record it at the business office in Quincy. The Plaintiff further notes that Mr. Gallaher did not find his written records, which are Trial Exhibits 1 through 3, until shortly before his deposition was taken on March 16, 2010. The Plaintiff claims that these records reflect the location and dates he and his employees worked at the various jobs. Mr. Gallaher, and his employees, were paid for every hour they worked by Mr. Shaffer.

The Plaintiff further asserts that Beverly Howell has, and will, testify that Trial Exhibits 36, 37, 38 and 39 are based upon the information provided by Ms. Gallaher and Mr. Shaffer regarding the hours they worked as well as the hours Mr. Shaffer's equipment was used. Her testimony will be that Trial Exhibits 36, 37, 38 and 39 accurately reflect the hours spent

by Mr. Shaffer, Mr. Gallaher and Mr. Gallaher's employees at each location.

The Plaintiff alleges that Defendant's position that Trial Exhibits 36, 37, 38 and 39 reflect "four entirely new claims regarding alleged work in Celotex facility" is not true. The cost for these projects was estimated in Counts II and V of the original Complaint.[1]

The Plaintiff further contends there has been no evidence presented to date which indicates that Ms. Howell's testimony and/or Mr. Gallaher's testimony and records are not accurate. Therefore, the Plaintiff claims that any directive limiting their testimony will prevent the jury from hearing the most relevant information from the two persons who have the most knowledge about the issues in question.

The exhibits at issue are attached to the Pre-Trial Order filed on April 10, 2010, which was filed before the Court denied the Plaintiff leave to add the four new claims on June 25, 2010. Thus, the new claims do not appear in the subsequently-filed first amended complaint, which is the operative

---

[1]The Court notes that in an Order entered on May 14, 2008, the Court entered summary judgment in favor of the Defendant on Count V (and Count VI) of the original complaint. It appears that Count II of the original complaint is asserted as Count I of the first amended complaint.

complaint before the Court. The Court has carefully reviewed the first amended complaint, especially the amount of damages sought in each of the six counts. It does not appear that the invoice amounts which are listed as trial exhibits are relevant to any claims asserted in the first amended complaint. Consistent with its previous Orders, therefore, the Court finds that Trial Exhibits 36, 37, 38, and 39 are irrelevant and will be excluded. This portion of the Defendant's motion in limine is also Allowed.

 II. Plaintiff Shaffer & Sons Construction's Motion in Limine

 (1) In its motion in limine, the Plaintiff first seeks the entry of an Order prohibiting the Defendant, and any of its counsel, from any reference regarding whether any sums awarded by the jury could be invested by the Plaintiff to produce a stream of income for the benefit of the Plaintiff (which, if allowed, would have the effect of inviting the jury to either make an additional and unauthorized reduction in future damages, or to reduce sums that should not have been reduced to present value to begin with), Schaffner v. Chicago Northwestern Transportation Company, 129 Ill.2d 1, 24-25 (1989). The Defendant does not oppose this portion of the

Plaintiff's motion in limine.  Accordingly, it is Allowed.

(2) The Plaintiff next seeks to prevent the Defendant from making any reference or argument regarding whether a damage award might allegedly cause a financial hardship upon the Defendant.  The Defendant states that it does not plan to make any such reference or argument. Accordingly, this portion of the Plaintiff's motion is Allowed.

(3) The Plaintiff further seeks to prevent any reference, evidence, or argument that the Defendant may be a civic-minded corporation which does many good charitable works.  Because the Defendant does not intend to present any such evidence or argument, this portion of the Plaintiff's motion is Allowed.

(4) The Plaintiff also seeks to prevent any reference, evidence, or argument as to whether William Shaffer had ever previously filed any worker's compensation, personal injury, or other claims other than the present claim.  Because the Defendant does not oppose this portion of the Plaintiff's motion, it is Allowed.

(5) The Plaintiff next seeks to prevent any mention of, or use as an

example for argument or other reasons by the Defendant, of any specific case, type of case, group of cases, or venue where a given verdict or judgment was or is alleged to be unreasonable or otherwise improper (such as the "McDonald's verdict," or "Tobacco verdicts," or "Class actions," or "Malpractice Actions," or "Madison County" or "Cook County"). Because the Defendant does not oppose this portion of the Plaintiff's motion, it is Allowed.

(6) The Plaintiff next seeks to exclude any evidence regarding whether any of the Plaintiff's witnesses were found guilty of a felony prior to the year 2000.

In response, the Defendant states that Plaintiff's disclosed trial witness James (Jim) Jones pled guilty to the felony offense of theft over $300 on January 17, 1995 in the Circuit Court of the Eighth Judicial Circuit, Adams County, Illinois. The Defendant has listed the Plea Form as Defendant's Exhibit X. Federal Rule of Evidence 609, which addresses impeachment evidence by conviction of a crime, states in pertinent part:

(a) General rule.–For the purpose of attacking the character for truthfulness of a witness,

. . .

    (2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

The Defendant states that it will agree not to offer Defendant's Exhibit X into evidence provided the Plaintiff likewise agrees not to attempt to offer character evidence regarding the Defendant's disclosed trial witness Ron Stephenson–the Defendant's former Quincy Yard Manager. Otherwise, the Defendant claims that its Exhibit X is admissible and Plaintiff's motion in limine should be denied.

The Court is uncertain regarding the nature of any character evidence pertaining to Mr. Stephenson. Thus, it may be premature to rule on this portion of the Defendant's motion. However, the Court is inclined not to

allow evidence of a conviction that is more than fifteen years old for the purpose of impeaching a witness. Pursuant to Rule 609(b), evidence of convictions over ten years old generally is not admissible. "It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." See Fed. R. Evid. 609 advisory committee's note. Based on the current record, the Court is unable to conclude that "the probative value of the conviction supported by specific facts and circumstances substantially outweigh its prejudicial effect." Therefore, it is not admissible under Rule 609.

The Defendant also relies on Federal Rule of Evidence 608, entitled "Evidence of Character and Conduct of Witness," which states in pertinent part:

> . . .
> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . .

The Court agrees with the Defendant that facts underlying a theft conviction are potentially probative of a witness's character for truthfulness. Moreover, Rule 608(b) does not contain the ten-year time limit. The Court notes, however, that the matter is left to its discretion. This Court finds that a conviction for theft in January 1995 is not particularly probative of truthfulness or untruthfulness nearly sixteen years later. Moreover, the Court finds that there is a potential for unfair prejudice if such an inquiry is allowed on cross-examination of the witness.

Accordingly, the Court will Allow this portion of the Plaintiff's motion. Barring any unforseen circumstances, the Court will prohibit evidence regarding whether any of the Plaintiff's witnesses were found guilty of a felony prior to the year 2000

(7) The Plaintiff also seeks to prevent reference to or mention of communications by and between the parties which discuss accounts receivable which are not an issue in the case at bar.

In response, the Defendant states that the work Plaintiff claims it was not paid for was allegedly performed from August of 2004 through May of

2005 and the scrap Plaintiff claims it was not paid for was allegedly provided in September 2004.  <u>See</u> First Amended Complaint, Counts I-V. However, the Defendant did not receive anything in writing regarding the alleged work and scrap until receiving a letter from the Plaintiff's counsel in June 2007–over two years after the last job was allegedly performed.

The Defendant intends to present certain evidence that individuals such as Howard Schroeder, who worked for the Plaintiff and former Plaintiff GSS Salvage (a partnership in which Plaintiff's President William Shaffer was a partner), and Patricia Case, another employee of the Plaintiff,  sent correspondence to the Defendant pertaining to accounts receivable and unpaid accounts.  Apparently, some of the correspondence related to amounts that had been allegedly due for a relatively short period of time. The Defendant contends that these individuals did not seek payment for amounts allegedly owed that are the subject of the lawsuit–even though those amounts had at the time been allegedly due from the Defendant for 1-2 years.

The Defendant asserts these records show that the Plaintiff, and

employees such as Schroeder and Case, knew how to complain and follow up in writing with the Defendant regarding the substantial amounts allegedly owed by the Defendant in this lawsuit.  However, the Plaintiff did not do so in a timely fashion.  The Defendant contends that the fact that these faxes/exhibits follow up on receivables which are not at issue in this case does not make the fax irrelevant.  The relevance is in the fact that Schroeder and Case paid attention to accounts receivable and unpaid accounts.  Moreover, both employees were fully capable and knew how to complain and follow up with the Defendant in writing regarding the substantial amounts allegedly owed by the Defendant in this lawsuit.

For the reasons stated in the Defendant's response, the Court finds that the evidence is potentially relevant under Federal Rule of Evidence 401. Moreover, the Court is unable to find that the potential for unfair prejudice outweighs the probative value of the evidence pursuant to Rule 403. Accordingly, this portion of the Plaintiff's motion in limine is Denied.

(8) The Plaintiff further seeks to prevent reference to or mention of communications by and between the parties related to GSS Salvage, which

is no longer a party to this action, or KPF, which is not a party to this action.

In response, the Defendant claims that this portion of the Plaintiff's motion in limine is related to the previous one and should be denied for the same reasons. The Defendant alleges that just because the exhibits follow up on unpaid hauls made by GSS Salvage–as opposed to unpaid accounts for the Plaintiff–does not make Exhibit Y or Exhibit JJ irrelevant. Similarly, just because Exhibit Z relates to KPF and not the Defendant does not make Exhibit Z irrelevant. The Defendant claims that the relevance is in the fact that the exhibits show that Plaintiff's employees Schroeder and Case paid attention to accounts receivable and unpaid accounts and were fully capable and knew how to complain and follow up with the Defendant in writing regarding the substantial amounts allegedly owed in this lawsuit, yet the Plaintiff failed to do so for over two years.

For the reasons stated in the Defendant's response, the Court finds that the evidence is potentially relevant under Rule 401. Moreover, the Court is unable to find that the potential for unfair prejudice outweighs the

probative value of the evidence pursuant to Rule 403. Accordingly, this portion of the Plaintiff's motion in limine is Denied.

(9) The Plaintiff seeks to prevent the introduction of any evidence related to the purchase of scrap from any third party.

In response, the Defendant states that Count II of the First Amended Complaint includes a claim seeking payment from the Defendant for salvage work in Salisbury, Missouri. <u>See</u> First Amended Complaint, Count II. In Count III, the Plaintiff seeks payment from the Defendant for moving railroad tracks from Gem City Ready Mix to the Defendant's Quincy Yard. <u>See</u> First Amended Complaint, Count III.

If the Plaintiff performed the work at Salisbury and Gem City Ready Mix, the Defendant believes that Plaintiff was paid from the Defendant's Quincy yard once the scrap from those locations was brought back to Alter's Quincy yard and weighed. Just as the owner of the scrap would have been paid on a per ton basis, the Plaintiff would have been paid for the salvage work in the same manner. The Defendant states that, unfortunately, such payments cannot be traced according to where the scrap came from–the

weigh ticket shows the date, amount of scrap, seller and the amount paid for the scrap but not where the scrap came from. However, the Defendant claims that it is undisputed that Defendant bought hundreds of thousands of dollars of scrap from the Plaintiff and Mr. Shaffer throughout the 2004-05 time period–the same time period during which the Plaintiff allegedly performed the work at Salisbury and Gem City Ready Mix.

The Defendant has listed its check register and scale ticket for payment to Gem City Ready Mix and check registers and scale tickets showing payments to Ray Shoemaker as Exhibits DDD and EEE. The Defendant states that witnesses will testify that Ray Shoemaker was the owner of the Salisbury, Missouri, property where the Salisbury salvage work was performed. Exhibit DDD shows payment to Gem City Ready Mix in February 2005 for $16,198 worth of scrap. Exhibit EEE shows multiple payments to Ray Shoemaker from March 2005 to May 2005 for scrap.

The Defendant claims, "According to Plaintiff's 'more accurate' Salisbury invoice that was created just earlier this year and that Plaintiff has disclosed as Plaintiff's Exhibit 44, Plaintiff now alleges it performed the

16

Salisbury salvage work in March and April 2005." The Defendant claims that Exhibits DDD and EEE are relevant on the basis that they make it less probable that Plaintiff has not been paid for any work at Salisbury and Gem City Ready Mix and thus less probable that Defendant owes Plaintiff any money for those projects. The Defendant further asserts that the fact that Defendant paid Shoemaker and Gem City Ready Mix as the owners of the scrap makes it more likely that Defendant paid Plaintiff for any salvage work regarding the very same scrap.

Based on the information in the Defendant's response, the evidence appears to at least be potentially relevant. Moreover, the Court is unable to determine that the danger of unfair prejudice outweighs the potential probative value of the evidence. Accordingly, this portion of the Plaintiff's motion in limine is Denied.

(10) The Plaintiff seeks to prevent the introduction of any evidence of the payment of shipping charges to GSS Salvage. Because the Defendant does not oppose this portion of the motion, it is Allowed.

(11) The Plaintiff next seeks to prevent the introduction of any

evidence regarding payment to Shaffer & Sons Construction for scrap as opposed to scrap processing.

In response, the Defendant states that its former Quincy Yard Manager, Mr. Stephenson, will testify via video deposition that if the Plaintiff performed the alleged salvage work, the Defendant believes the Plaintiff was paid from the Defendant's Quincy yard once the scrap from those locations was brought back to the yard and weighed. The Defendant claims that payments from the yard scale cannot be traced according to where the scrap came from–the weigh ticket shows the date, amount of scrap, seller and the amount paid for the scrap, but not where the scrap came from. However, it is known that Defendant bought hundreds of thousands of dollars of scrap from the Plaintiff and Mr. Shaffer throughout the 2004-05 time period–the same period during which the Plaintiff allegedly performed the salvage work at issue. Therefore, the Defendant contends that evidence regarding payment for scrap is relevant as it makes it less probable that Plaintiff has not been paid for the alleged salvage work.

The Defendant further states that Count V of the First Amended

Complaint seeks payment for various scrap allegedly provided to the Defendant's Quincy yard valued at over $100,000.  Mr. Shaffer is expected to testify that Plaintiff provided the Quincy yard with this scrap to cover an inventory shortage at the yard.  In his video deposition, Mr. Stephenson denies that Plaintiff ever provided the Quincy yard with any scrap to cover an inventory shortage.  Mr. Stephenson further testifies that he is not aware of Alter owing the Plaintiff any money, including money for scrap.  The Defendant further alleges that other witnesses will testify regarding this issue.  Moreover, the Defendant plans to offer inventory exhibits–Exhibits GGG and HHH–which the Defendant claims will show the Plaintiff did not provide the amount of scrap alleged.

The Defendant further asserts that evidence regarding payment to the Plaintiff for scrap is also relevant to show the history of the parties regarding scrap sales and purchases–including the Defendant's habit and routine practice of promptly paying the Plaintiff and Mr. Shaffer for hundreds of thousands of dollars worth of other scrap from numerous other transactions, including transactions during the same time period as alleged in Count V.

See Fed. R. Evid. 406 ("Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.").

Based on the assertions in the Defendant's response brief, the Court finds that evidence regarding payment to the Plaintiff for scrap, as opposed to scrap processing, is at least potentially relevant. Because the Court is unable to conclude that the potential probative value of the evidence is outweighed by the danger of unfair prejudice, this portion of the Plaintiff's motion will be Denied.

(12) The Plaintiff also seeks to prevent the introduction of evidence of payment by the Defendant for jobs performed by the Plaintiff which are not identified in the Plaintiff's first amended complaint.

In response, the Defendant states that its disclosed Exhibit RR contains all of the Plaintiff's invoices for different jobs for the Defendant, Alter Scrap Processing (another name under which the Defendant conducts

business), and Alter Trucking and Terminal Corporation (a related entity) from the Plaintiff's computer hard drive, including those invoices stamped "PAID." According to the Defendant, Exhibit RR contains 55 invoices stamped "PAID," including 32 invoices during the 2004-05 time period which is the same time period for the alleged work at issue in Counts I through IV of the First Amended Complaint. The Defendant further states that Exhibit III is a spreadsheet summary of total payments to the Plaintiff and Mr. Shaffer by the Defendant for jobs from January 1, 2004 through July 18, 2007. Exhibit JJJ is a spreadsheet summary of total payments to Plaintiff by Alter Trucking & Terminal Corporation for five jobs with invoice dates from July 14, 2005 through February 21, 2006.

The Defendant contends that Exhibits RR, III and JJJ are relevant for any and all of the following general reasons: (1) the history between the parties, including the Defendant's history of paying for legitimate work based upon legitimate invoices; (2) the Defendant's habit and routine practice of promptly paying the Plaintiff and Mr. Shaffer for legitimate work based upon legitimate invoices, including for jobs during the same time

period at issue; (3) the exhibits show that the Plaintiff and Mr. Shaffer continued to do other, significant work for Alter despite allegedly being owed hundreds of thousands of dollars by Alter for previous work; and (4) the "PAID" invoices contained in the Defendant's Exhibit RR can be compared to the invoices for the jobs at issue to show and highlight the differences with the invoices for the jobs at issue.

Based on the representations of the Defendant, the Court agrees that this evidence is potentially relevant. Because the Court is unable to determine that the potential probative value of this evidence is outweighed by the danger of unfair prejudice, this portion of the Plaintiff's motion will be Denied.

<u>Ergo</u>, the Defendant's motion in limine [d/e 45] is ALLOWED. The Plaintiff's first motion in limine [d/e 46] is ALLOWED in part and DENIED in part, as provided in this Order.

ENTER: December 10, 2010

FOR THE COURT:

s/Richard Mills
United States District Judge